**LIVERS v. UNITED STATES.**

No. 11192.

United States Court of Appeals
Sixth Circuit.

Dec. 15, 1950.

2. See Basta v. United States Fidelity & Guaranty Co., 107 Conn. 446, 140 A. 816, 818.

Charles T. Livers, in pro. per.

Joseph C. Bullock, Cincinnati, Ohio, Ray J. O'Donnell, Joseph C. Bullock, Cincinnati, Ohio, on brief, for appellee.

Before HICKS, Chief Judge, and ALLEN and MARTIN, Circuit Judges.

PER CURIAM.

On November 30, 1943, the appellant entered a plea of guilty to a charge of kidnaping in violation of Title 18, section 408a,[1] U.S.C., and was sentenced to imprisonment for a term of 75 years. The indictment charged that the kidnaper, for the purpose of robbing his victim, transported the victim in interstate commerce; and, while enroute from Cook County, Illinois, tied, trussed, and choked him, and with a heavy blunt instrument beat him into insensibility: all to his serious injury.

On a motion to correct the sentence, filed March 21, 1949, appellant avers that the district judge, in sentencing him to 75 years imprisonment, exceeded his power, abused his discretion, and "was barred, by the Due Process Clause of the Fifth Amendment to the Federal Constitution, from imposing sentence in excess of twenty-five (25) years under the United States Criminal Code." He asserts in his motion that the sentence of 75 years is more severe than a life sentence, in that a "natural life termer" is eligible for parole in 15 years, "whereas the defendant must serve a minimum of twenty-five years before he is eligible to apply for a parole."

After hearing the motion, the district court filed appropriate findings of fact and conclusions of law and entered an order on April 5, 1950, denying the motion to correct sentence. From the findings of fact, it appears that experienced criminal lawyers were appointed by the court to represent the defendant. These attorneys advised him of his constitutional rights; and, after several conferences with them, appellant, when arraigned in open court, entered a plea of guilty to the indictment. His mother and sister were also present in court and advised with him. Before his arraignment, appellant was examined by a qualified psychiatrist who pronounced that appellant was not suffering from any type of mental disease.

The district court's findings revealed that appellant hitchhiked a ride at Dwight, Illinois, with his victim. Not far from Chicago, appellant pointed a gun at the victim and forced him to get out of the car and into its trunk compartment, which appellant then locked. The victim was robbed by appellant of his wallet and money. With the victim locked in the trunk, appellant drove the car into Indiana; and, in that state, released the victim from the trunk, took him to a corn field where he gagged him and bound him hand and foot. Moreover, appellant beat his victim with his fist and hammered him into unconsciousness with a gun. Later,

1. 1948 Revised Criminal Code, 18 U.S.C.A. § 1201.

appellant unbound the victim and, while threatening him with the gun, drove him to Cincinnati, where he released the victim and fled in the latter's car.

After being captured and taken to the county jail in Cincinnati where he awaited action of the federal grand jury on the kidnaping charge, appellant engineered a plot with three other prisoners to escape from jail by assaulting and disarming a Special Agent of the Federal Bureau of Investigation. They planned to use the agent's gun to obtain their freedom; and appellant told one of the conspirators that he was prepared to shoot a guard, if necessary. The conspirators intended to strike the F. B. I. Agent with a piece of pipe, obtained from the shower bath. In furtherance of this plan, appellant wrote a note to the warden, asking that the special agent working on the case visit him in the jail. The nefarious plot was thwarted by revelations made to the warden by another prisoner. Participation in the plot was admitted by all the conspirators and each, including the appellant, was sentenced to imprisonment for two years.

These facts present a glaring picture of a violent kidnaper appropriately severely dealt with by the United States District Judge. There is no merit whatever to appellant's petition for a correction of the sentence. The district court, in imposing a sentence of 75 years, acted within the clear scope of the kidnaping statute. 18 U.S.C. § 408a. In its pertinent part the section provides that, "if the death penalty shall not apply nor be imposed the convicted person shall be punished by imprisonment in the penitentiary for such term of years as the court in its discretion shall determine". The kidnaping law, sometimes called the "Lindbergh Law," has, in our judgment, correctly been held not to be unconstitutional for the failure of the Congress to specify a minimum term of imprisonment to which an offender can be sentenced. Waley v. Johnston, Warden, 9 Cir., 112 F.2d 749. The quoted language of the statute vests in the court a plain discretion to fix the term of imprisonment as life, or the equivalent thereof in terms of years, or to a lesser term than life imprisonment.

Federal courts are not concerned with parole regulations, with which they have nothing to do. The function of the United States District Courts is to impose, in the exercise of their discretion within the limits of the federal statutes, just and lawful punishment for violations of federal law. In the enactment of our national laws against crime, the Congress has vested United States District Judges with wide discretion in assessing punishment within the limits of the various federal statutes. The exercise of that discretion will not be disturbed on appeal, except upon a plain showing of gross abuse. In the instant matter, the district judge clearly did not abuse his discretion; but, on the contrary, exhibited a sound and just exercise of his judicial power. His judgment is accordingly upheld; and an order of affirmance will be entered.